# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BEAU D. JAMMES,<br><br>     Plaintiff,<br><br>v.<br><br>SERGEANT MCQUAID, OFFICER MEDINA, and OFFICER RYAN,<br><br>     Defendants. | Case No. 18-CV-493-JPS<br><br><br>**ORDER** |

1. **BACKGROUND**

On March 7, 2019, Magistrate Judge David E. Jones screened Plaintiff's fourth amended complaint and allowed him to proceed on a Fourth Amendment excessive force claim against Sergeant McQuaid ("McQuaid") and Officer Medina ("Medina"), as well as a Fourth Amendment claim for unlawful arrest against McQuaid, Medina, and Officer Ryan ("Ryan") (collectively, "Defendants"), each brought pursuant to 42 U.S.C. § 1983. Magistrate Judge Jones also denied without prejudice Plaintiff's motion to appoint counsel, explaining that litigants must first make "reasonable efforts to hire [or retain] private counsel," and finding that "plaintiff has not shown that he has made an effort to find counsel on his own." (Docket #24 at 5). Only after Plaintiff demonstrated his efforts to secure counsel would the Court assess whether the difficulty of the case exceeded Plaintiff's ability to coherently present it. *Id.* (citing *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013)).

Defendants submitted an answer to the operative complaint on May 30, 2019. (Docket #37). On June 25, 2019, Plaintiff moved to extend time to

reply to the answer and to appoint counsel. (Docket #40). On July 15, 2019, Plaintiff filed a motion for reconsideration as to the denial of his motion for counsel. (Docket #41). He did not provide any evidence of his attempts to secure counsel, or explain why he was unable to represent himself in the litigation, in either of these motions. Three days later, on July 18, 2019, Plaintiff filed another motion to extend time to reply to Defendants' answer. (Docket #42).

On July 24, 2019, Magistrate Judge Jones issued a scheduling order along with copies of the relevant Federal Rules of Civil Procedure and Civil Local Rules governing summary judgment. (Docket #46). In the scheduling order, Magistrate Judge Jones warned Plaintiff that "[f]ailure to make a timely submission or otherwise comply with the court's orders may result in the dismissal of this case for failure to prosecute." *Id.* at 2. The order also contains the standard for appointment of counsel in civil cases, explaining that Plaintiff "first must contact several attorneys to see if he can find a lawyer on his own." *Id.* at 3. If no lawyer agreed to represent Plaintiff, he could move to appoint counsel, "but he must attach to that motion letters or other evidence showing that he tried to find a lawyer but was unsuccessful." *Id.* Plaintiff did not submit any additional motions.

In mid-September, the case was transferred to this branch of Court for disposition. No further correspondence from Plaintiff was received. On November 7, 2019, the docket reflects that Plaintiff called to tell the Court that he has a new address, and he was informed to send a letter to the Court with his new address. However, no letter was received. On December 30, 2019, Defendants filed a motion for summary judgment. (Docket #53). Plaintiff never responded to the motion for summary judgment, rendering the motion essentially unopposed. Plaintiff also did not oppose the

accompanying proposed facts. *See* (Docket #55). Therefore, the Court will treat Defendants' statement of facts as undisputed for the purpose of their motion. Fed. R. Civ. P. 56(e)(2); Civ. L.R. 56(b)(4). For the reasons explained below, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's miscellaneous motions as moot.

2.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.  **RELEVANT FACTS**

On the morning of October 12, 2015, Plaintiff and three of his contemporaries, including his ex-girlfriend, Cassandra Dreger ("Dreger"), were passing time outside of a transit station. The transit station is across the street from the Appleton Public Library. At around 10:40 a.m., an argument broke out between Plaintiff and Dreger. When the argument was over, Plaintiff left the scene on his bike.

Shortly thereafter, Dreger and two witnesses, Delvin Debruin ("Debruin") and Shakeno Green ("Green"), called the Appleton Police Department. They alleged that Plaintiff had pulled a knife on Dreger and

Debruin during the fight. Appleton Police Sergeant Daul ("Daul") arrived at the Appleton Public Library to investigate the scene. As part of his investigation, he interviewed Dreger, Debruin, and Green about the altercation. Daul's body camera shows a 28-minute segment of these interviews, and includes Daul's successful attempts to identify Plaintiff using an old photograph.

In light of this investigation, Ryan and "numerous other officers," including Medina and McQuaid, were dispatched to assist in locating and arresting Plaintiff for pulling a knife out on a woman. (Docket #55 at ¶¶ 22, 23, 26). Ryan and the numerous other officers undertook a search of the relevant Appleton area. Defendants ultimately found Plaintiff at the Salvation Army.

Defendants submitted footage of the arrest from a body camera worn by McQuaid during the arrest. The video shows three officers approach Plaintiff in the Salvation Army cafeteria, seize him, and quickly position him so that he stood facing a wall. Upon being seized, Plaintiff yelled in surprise and asked, "What did I do?" He stood facing the wall for approximately thirty seconds. He was then handcuffed, escorted out of the cafeteria, and led to the parking lot, at which point he was searched and briefly questioned. He repeatedly asked, "What did I do?" The video indicates that Plaintiff cooperated with the search and the questioning. After the search, Plaintiff was guided to the backseat of a police vehicle. There was no altercation between Plaintiff and the police.

The body camera footage of the interviews and the arrest appear to be undoctored. For example, the audio and video are comprehensible (notwithstanding some gusts of wind or the occasional hand in the way of

the camera), and it does not appear that the body camera was stopped, restarted, or spliced to omit segments of the relevant events.

4. ANALYSIS

    4.1 Unlawful Arrest

In order for an arrest to be lawful, an officer must have probable cause to believe that the suspect committed a crime. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Probable cause exists if "the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.*

The undisputed facts demonstrate that the officers arrested Plaintiff for allegedly pulling a knife on two people. Based on three witness interviews, Daul concluded that there was probable cause to believe that Plaintiff had been disorderly with a weapon. Daul confirmed Plaintiff's identity based on an old photograph, and the officers began to search for him. They found him at a Salvation Army, wearing a black hat, as described by Dreger. In light of the information available to the officers at the time, there was a "probability or substantial chance" that the suspect had engaged in criminal activity. *Id.* Therefore, the officers had probable cause for the arrest, and the arrest was lawful.

    4.2 Excessive Force

An officer's use of excessive force during an arrest is assessed using the Fourth Amendment's reasonableness standard. A police officer's use of force is unconstitutional if "judging from the totality of circumstances at the

time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Brooks v. City of Aurora, Ill.*, 653 F.3d 478, 486 (7th Cir. 2011). The nature and extent of the force that constitutes "reasonable" force depends on the specific circumstances of the arrest, including the severity of the crime, the threat posed to the officers, and whether the suspect is trying to resist or flee. *Weinmann v. McClone,* 787 F.3d 444, 448 (7th Cir. 2015); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012). The "officer's subjective beliefs and motivations are irrelevant"; the inquiry is an objective one. *Horton v. Pobjecky*, 883 F.3d 941, 950 (7th Cir. 2018).

The video evidence shows three officers approach Plaintiff in the cafeteria and swiftly position him to face a wall. Aside from his initial expression of surprise, and his obvious confusion, Plaintiff cooperated. The video does not show the officers throwing Plaintiff against the wall, slamming him against the wall, twisting his limbs, or employing any force other than what was minimally necessary to seize Plaintiff. Plaintiff did not resist the arrest, the officers were not overly aggressive, and the incident did not escalate at any point. The entire series of events, from the initial arrest in the cafeteria, to the search in the parking lot, to the moment Plaintiff was placed in the police car, occurred fairly smoothly. Accordingly, there is no evidence that the officers used excessive force to arrest Plaintiff, in violation of his Fourth Amendment rights.

In sum, there is no evidence that Plaintiff was arrested unlawfully, or that excessive force was used in the process of the arrest. Rather, the body camera videos demonstrate that reasonably careful police work was conducted in order to develop probable cause that a crime had been

committed. After this, officers identified Plaintiff as the suspect, located him, and arrested him in a swift and non-violent manner.

5.  **CONCLUSION**

For the reasons explained above, the Court must grant Defendants' motion for summary judgment because Plaintiff has failed to raise a genuine issue of material fact. Plaintiff's motions to extend time and to appoint counsel will be denied as moot, and the case will be dismissed.

Accordingly,

**IT IS ORDERED** that Plaintiff's motions (Docket #40, #41, #42) be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket #53) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge